Albert J. GAIARDO and Patricia Gaiardo, his wife, Appellees,

v.

ETHYL CORPORATION, a/k/a Ethyl Corporation, Visqueen Division, Appellant.

No. 87–5248.

United States Court of Appeals, Third Circuit.

Submitted Pursuant To Third Circuit Rule 12(6) Oct. 5, 1987.

Decided Dec. 14, 1987.

Joseph P. Lenahan, Frank T. Blasi, Edward J. Panichas, Scranton, Pa., for appellant.

Gene E. Goldenziel, Needle and Goldenziel, Scranton, Pa., for appellees.

Before WEIS and STAPLETON, Circuit Judges, and COHILL,* District Judge.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Although defendant company succeeded on its motion for summary judgment, the district court refused to grant its request for counsel fees under Federal Rule of Civil Procedure 11. We agree with the district court that plaintiff employee had reasonable grounds to bring suit and that no violation of Rule 11 occurred. Accordingly, we will affirm the order of the district court.

More than two months after summary judgment had been entered in its favor, defendant, Ethyl Corporation, requested Rule 11 sanctions against plaintiffs Albert

* The Honorable Maurice B. Cohill, Jr., Chief Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

and Patricia Gaiardo [1] for counsel fees and expenses totalling $11,000. The district court denied the motion, finding that when plaintiff and his counsel filed suit they had reason to believe the complaint had merit. Additionally, the court found no evidence in the record to substantiate the defendant's assertion that the plaintiff's suit was intended as harassment. Defendant has appealed.

The plaintiff's detailed complaint alleged that after almost sixteen years of exemplary service, defendant company discharged him because he had refused to falsify quality control documents. Plaintiff contends that his termination was not for just cause or for any reason listed in the company's employee handbook and that he was not warned as specified in the procedures set out in the handbook. Plaintiff sought compensatory and punitive damages for breach of his asserted contract of employment as well as for a tort cause of action.

In granting summary judgment for defendant, the district court determined that, under applicable Pennsylvania law, employee handbooks describing company policy do not constitute employment contracts. After examining submitted documents, the court concluded that plaintiff was an employee-at-will who was not assured continued employment. Moreover, the court found inapplicable to the plaintiff's circumstances the "public policy" exception to at-will employment contracts articulated in *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Accordingly, plaintiff could not prevail. The court also held for defendant on counts alleging defamation and intentional infliction of emotional distress.

In refusing to award Rule 11 sanctions the district court observed that, although it had determined the *Geary* public policy exception did not apply, reliance on that theory was not unreasonable. Additionally, plaintiff had argued that he was trying to expand the public policy exception.

On appeal, defendant contends that the district court abused its discretion in failing to award sanctions because the plaintiff's claim clearly was not warranted under settled Pennsylvania law. Defendant cites state appellate decisions holding that employment manuals do not constitute employment contracts. More specifically defendant asserts in its brief that the *Geary* case stated: "A refusal to falsify quality control records is not a violation of the public policy of Pennsylvania."

Plaintiff responds that a state appellate ruling, which the district court cited in support of summary judgment, had not yet been published when he filed his complaint. He points also to his affidavit, which in opposing the defendant's summary judgment motion, asserted that other employees had been terminated for misconduct only after receiving the warnings required by the handbook. In short, plaintiff insists that his decision to bring suit was reasonable under the circumstances and, consequently, the district court did not abuse its discretion in refusing to impose sanctions.

In pertinent part, Fed.R.Civ.P. 11 reads: "The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

\* \* \* \* \* \*

"If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties

---

1. The plaintiff's wife sued for loss of consortium. That claim was also dismissed as derivative of the husband-plaintiff's claim. For purpose of clarity we will refer to plaintiff in the singular throughout this opinion.

the amount of the reasonable expenses incurred. . . ."

Formulating a rule broad enough to curb abusive litigation tactics and misuse of the court's process but yet not so sweeping as to hinder zealous advocacy was obviously a formidable task. In drafting Rule 11, the Advisory Committee realized that enforcement might spawn satellite litigation counter-productive to efficient disposition of cases and that time might be required to familiarize both bench and bar with the terms and aims of the new measure. Although somewhat slow in emerging, case law and commentary has proliferated and it might now be helpful to review both the language and purposes of the Rule.[2] As the Advisory Committee noted, the 1983 revision of Rule 11 was designed to prevent abuse caused not only by bad faith but by negligence and, to some extent, by professional incompetence. Consequently, an objective test was adopted to determine if, after "reasonable inquiry," the pleading, motion or other paper is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law."

The standard for testing conduct is reasonableness under the circumstances. *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 540 (3d Cir.1985). As a commentator has observed, the Rule does not permit use of the "pure heart and empty head" defense. Schwarzer, *Sanctions Under The New Rule 11—A Closer Look*, 104 F.R.D. 181, 187 (1985). *See Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985) ("Simply put, subjective good faith no longer provides the safe harbor it once did."), *cert. denied*, —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

The Rule imposes an obligation on counsel and client analogous to the railroad crossing sign, "Stop, Look and Listen." It may be rephrased, "Stop, Think, Investigate and Research" before filing papers either to initiate a suit or to conduct the litigation. These obligations conform to those practices which responsible lawyers have always employed in vigorously representing their clients while recognizing the court's duty to serve the public efficiently. It bears repeating that the target is abuse—the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute.

Possible sanctions include requiring the offending client, lawyer, or both, to pay all or part of the adversary's counsel fees incurred as a result of the violation. This sanction combines the concepts of deterrence and reimbursement for the wronged party.

The Advisory Committee notes that willfulness is relevant in selecting a sanction. In addition to financial penalties courts may sanction by warning, oral reprimands in open court, or written admonition. One court ordered the attorneys who violated the rule to circulate in their firm a copy of the opinion in which the pleadings were criticized. *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 103 F.R.D. 124, 129 (N.D.Cal.1984), *rev'd*, 801 F.2d 1531 (9th Cir.1986). Another district judge directed the offending lawyers to attend a seminar on Federal Practice and Procedure. *William Stevens v. City of Brockton*, 676 F.Supp. 26 (D.Mass.1987) (Skinner, J.). Although dismissal of a case is an additional alternative, judges are reluctant to jeopardize a client's case because of the lawyer's indiscretion. Kassin, An Empirical Study of Rule 11 Sanctions (Federal Judicial Center 1985).

**2.** A partial list of the commentary includes Nelken, *Sanctions under Amended Federal Rule 11—Some "Chilling" Problems in the Struggle Between Compensation and Punishment*, 74 Geo. L.J. 1313 (1986); Note, *The Dynamics of Rule 11: Preventing Frivolous Litigation by Demanding Professional Responsibility*, 61 N.Y.U. L.Rev. 300 (1986); Oliphant, *Rule 11 Sanctions and Standards: Blunting the Judicial Sword*, 12 Wm. Mitchell L.Rev. 731 (1986); Note, *The 1983*

*Amendments to Rule 11: Answering the Critics' Concern with Judicial Self-Restraint*, 61 Notre Dame L.Rev. 798 (1986); Note, *Litigant Responsibility: Federal Rule of Civil Procedure 11 and Its Application*, 27 B.C.L.Rev. 385 (1986); Symposium, *Amended Rule 11 of the Federal Rules of Civil Procedure: How Go the Best Laid Plans?*, 54 Fordham L.Rev. 1 (1985). 54 Fordham L.Rev. 13, 19 (1985).

■ Rule 11 sanctions should not be viewed as a general fee shifting device. By and large federal courts are bound by the "American Rule," requiring parties to shoulder their own legal expenses. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). This Rule applies in the absence of specific statutory authorization for thrusting the winner's counsel fees on the losing party. *Cf.* 42 U.S.C. § 1988.

The Rules Enabling Act, 28 U.S.C. § 2072, bars enactment of substantive provisions masked as rulemaking. The Advisory Committee, aware of this limitation, consequently did not intend to effect a major change in the American Rule in the guise of expansive Rule 11 sanctions. Complete or partial fee shifting is but one form of disciplinary action which a court may invoke in appropriate circumstances.

■ The goal of Rule 11, therefore, is not wholesale fee shifting but correction of litigation abuse. The Rule authorizes "reasonable" fees, based on what is fair and reasonable in the particular circumstances—not necessarily actual fees. When counsel fees are sought under Rule 11, the duty of mitigation should minimize any excessive burden on the sanctioned party and diminish the tactical value of orchestrating motions to increase the cost of litigation for the other side. *See United Food & Commercial Workers Local No. 115 v. Armour & Co.*, 106 F.R.D. 345 (N.D.Cal. 1985) (attorney should use telephone conference call or status conference to alert court to abuse, rather than more expensive formal motion); *Weisman v. Rivlin*, 598 F.Supp. 724 (D.D.C.1984) (given all circumstances, including a showing of negligence but not willfulness, court awarded sanction of $200 in response to request for $7,858.75); *Brown (Neely) v. Federation of State Medical Bds.*, 830 F.2d 1429, 1440 (7th Cir.1987) (party not required to pay *all* the fees and costs incurred; costs and fees must be calculated in light of the purposes of Rule 11); Nelken, *supra* n. 2, at 1335.

■ Litigants misuse the Rule when sanctions are sought against a party or counsel whose only sin was being on the unsuccessful side of a ruling or judgment. Restated, Rule 11 sanctions awarding counsel fees do not automatically or usually follow an adverse judgment or ruling. Substantially more is required. *See Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157–58 (3d Cir.1986).

As we emphasized in *Morristown Daily Record, Inc. v. Graphic Communications Union Local 8N*, 832 F.2d 31, 32 n. 1 (3d Cir.1987), when issues are close, the invocation of Rule 11 borders on the abusive: "We caution litigants that Rule 11 is not to be used routinely when the parties disagree about the correct resolution of a matter in litigation. Rule 11 is intended for only exceptional circumstances." Nothing in the language of the Rule or the Advisory Committee Notes supports the view that "the Rule empowers the district court to impose sanctions on lawyers simply because a particular argument or ground for relief contained in a non-frivolous motion is found by the district court to be unjustified." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1540–41 (9th Cir.1986). *See also Neely*, at 1440, n. 2.

■ Similarly, just as mere failure to prevail does not trigger a sanction award, neither does advocating new or novel legal theories. The Advisory Committee expressed particular concern that the Rule might be interpreted to inhibit imaginative legal or factual approaches to applicable law or to unduly harness good faith calls for reconsideration of settled doctrine.

The Committee Note observes that "[t]he rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." The Rule is not breached if after reasonable legal research and adequate factual investigation, a party and counsel in good faith decide to challenge existing law. Responsible, albeit adventuresome, lawyers must not be sanctioned in those circumstances, especially when they advise the court of existing law and their considered decision to seek its modification or reversal. The Rule seeks to strike a balance between the need to curtail abuse of the legal system and the

need to encourage creativity and vitality in the law.

■ Counsel or client violates the Rule by mounting an attack on existing law not in good faith but rather prompted by such improper considerations as harassment or undue delay. Creativity by itself is not enough. "The creativity must be in service of a good faith application of the law or at least a good faith request for a change in the law." However, distortion of a statute is "precisely the sort of creativity Rule 11 should chill." *Pawlowske v. Chrysler Corp.*, 623 F.Supp. 569, 573 (N.D.Ill.1985).

Sanctions are appropriate "if a pleading, motion, or other paper is signed" in contravention of the Rule. In applying this criterion, the Committee Notes emphasize that the "court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion or other paper was submitted." *Holtzman*, 775 F.2d at 540. The rule focuses on the act of signing the document as a certification that the signer believes in the propriety of the submission and that it has not been filed for an improper purpose.

By its terms Rule 11 does not authorize a sanction for failing to amend or correct a document if information obtained or legal research performed after filing reveals an error. Cases which impose a continuing duty on counsel to make amendments based on knowledge ascertained after filing are not consistent with the Rule. *Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir. 1986). *Accord Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc.*, 809 F.2d 451, 454 (7th Cir.1987). The analysis properly concentrates on circumstances existing at the time the paper was filed.

■ Notwithstanding the emphasis on the time of initial submission, however, parties will not be entitled to continuing immunity if they acquire or should acquire knowledge under the Rule's standard before a later filing. Subsequent papers must be judged by information available when they are filed. For example, a defendant's answer may be in the spirit of the Rule at the time of filing, but a motion for summary judgment founded on the same theory may violate the Rule if investigation or research shows that the initial information was incorrect. Liability would be based on circumstances present when the motion is filed, not when the answer was filed. *Pantry Queen Foods, Inc.*, 809 F.2d at 454.

■ It follows that Rule 11 sanctions are improper in situations which do not involve signing a paper. Thus, the Rule should not be invoked against an attorney who fails to dismiss a case after the opposing attorney submits evidence that a statute of limitations or res judicata bars the suit. *Cf. Robinson v. National Cash Register Co.*, 808 F.2d 1119 (5th Cir.1987) (imposing continuing duty but insulating attorney who did not sign papers from Rule 11); *Van Berkel v. Fox Farm and Road Mach.*, 581 F.Supp. 1248 (D.Minn.1984) (imposing continuing duty).

■ Although Rule 11 sanctions do not apply to a mere failure to act, an attorney's inaction in bad faith may implicate penalties under 28 U.S.C. § 1927. That statute authorizes assessment of costs and attorney fees against a lawyer who "multiplies proceedings in any case unreasonably and vexatiously." Section 1927 requires a finding of counsel's bad faith as a precondition to the imposition of fees. *Baker Indus. v. Cerberus Ltd.*, 764 F.2d 204, 208–9 (3d Cir.1985). However, by its terms that statute is not directed to parties.

The growing tendency to extend the Rule beyond its text and intent concerns us, as does the noticeable increase in unjustified requests for sanctions. The Rule is being perverted when used as a tool for harassment rather than as an instrument to prevent abuse. *Cf. Hudson v. Moore Business Forms, Inc.*, 827 F.2d 450, 453 (9th Cir.1987) (court ordered defendant to show cause why Rule 11 sanctions should not be imposed for wholly frivolous counterclaim, requesting $4 million in punitive damages, brought for improper purpose of harassing plaintiff into dropping the case and deterring others from bringing suit).

The use of Rule 11 as an additional tactic of intimidation and harassment has become part of the so-called "hardball" litigation techniques espoused by some firms and their clients. Those practitioners are cautioned that they invite retribution from courts which are far from enchanted with such abusive conduct.[3] A court may impose sanctions on its own initiative when the Rule is invoked for an improper purpose. *Lieb,* 788 F.2d at 157.

To forestall abuse of Rule 11, some district judges have announced that they will entertain motions for sanctions only on prior direction from the court. As we said in *Cinema Service Corp. v. Edbee Corp.,* 774 F.2d 584, 586 (3d Cir.1985), " 'Greater attention' by the courts to 'pleading and motions abuses and the imposition of sanctions when appropriate, should discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.' "

Against this background we now turn to the merits of the appeal before us. Our standard of review is not whether an appellate court would have applied the sanction, but whether the district court abused its discretion in denying it. *Holtzman,* 775 F.2d at 540.

The rights of individuals classified as employees-at-will under state law have provided a frequent source of litigation in the last twenty-five years. The employees have achieved limited success in securing permanency to their positions or in establishing just cause for discharge. Nonetheless, an objective observer must conclude that there is a continuing effort to modify and liberalize the law in favor of the employees.

The strong dissenting opinion of Pennsylvania Supreme Court Justice Roberts in *Geary,* 456 Pa. at 185–94, 319 A.2d at 180–85, evidences judicial endorsement of employees' theories. In that case, the majority was careful to state: "We hold only that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge." *Id.* at 184–85, 319 A.2d at 180.

Defendant contends that *Geary* excludes as a violation of public policy the failure to falsify quality control records. Contrary to that assertion, the Pennsylvania Supreme Court stated only that while it agreed that "employees should be encouraged to express their educated views on the quality of their employer's products," it declined to create at that time a new non-statutory cause of action for employees-at-will. *Id.* at 183, 319 A.2d at 180.

In an opinion filed just four days before plaintiff instituted his suit, the Superior Court of Pennsylvania observed that "[t]he question of whether an employee handbook should be accorded contractual significance has engendered tremendous controversy in recent years." *Martin v. Capital Cities Media, Inc.,* 354 Pa.Super. 199, 211, 511 A.2d 830, 836 (1986). The court also commented that the employment-at-will concept "seems precariously perched on the brink of change" and has been eroded by "piecemeal attacks" in tort and contract causes of action. *Id.* at 208, 511 A.2d at 834. In *Novosel v. Nationwide Ins. Co.,* 721 F.2d 894 (3d Cir.1983), the plaintiff-employee prevailed in preliminary skirmishing, and in *Wolk v. Saks Fifth Avenue, Inc.,* 728 F.2d 221 (3d Cir.1984), we concluded that the district court properly ordered discovery on an employee's claim rather than dismissing it as a matter of law.

These cases demonstrate that although plaintiff here did not prevail under current law, his suit was not frivolous. Finding a violation of Rule 11 in these circumstances would indeed chill effective advocacy and would run directly contrary to the Rule's language and intent. *See Smith v. Detroit Fed'n of Teachers,* 829 F.2d 1370 (6th Cir. 1987) (Rule 11 sanctions denied because

---

**3.** We wish to make it clear that these critical observations on "hardball" tactics are not directed at counsel in this case.

failure of suit grounded on decision issued after plaintiff filed complaint).

Defendant here alleged that the suit was filed for the purpose of harassment, but the district court found nothing in the record to support the charge; neither do we.

We conclude, therefore, that the district court properly declined to grant the defendant's motion. The order of the district court will be affirmed.