Syed HUSSAIN, Plaintiff,

v.

CARTERET SAVINGS BANK, F.A. and
TRW, Defendants.

Civ. A. No. 87–3980.

United States District Court,
D. New Jersey.

Jan. 11, 1989.

Marcia S. Kasdan, Englewood Cliffs,
N.J., for plaintiff.

Carl H. Rifino, Carella, Byrne, Bain &
Gilfillan, Roseland, N.J., for defendant Carteret Savings Bank, F.A.

Jerome P. Coleman, Townley & Updike,
New York City, for defendant TRW, Inc.

## OPINION AND ORDER

WOLIN, District Judge.

Two motions are currently before the Court. In the first, defendant Information Services Division of TRW, Inc. ("TRW"), an Ohio corporation, moves for summary judgment against plaintiff Syed Hussain ("Hussain"). In the second motion, defendant Carteret Savings Bank, F.A. ("Carteret"), a federally chartered banking institution with its principal place of business in New Jersey, moves to dismiss the complaint or, in the alternative, for summary judgment against Hussain. Both TRW and Carteret also seek sanctions against plaintiff and his counsel pursuant to Fed.R.Civ. P. 11. For the reasons stated below, TRW's motion for summary judgment is granted, and Carteret's motion to dismiss the complaint is also granted. The Court declines to award Rule 11 sanctions to either defendant.

## I. BACKGROUND

Plaintiff, a New Jersey resident, works as a metallurgical chemist and also maintains a business in real estate investment. On or about July 23, 1984, plaintiff applied as a co-maker with Mr. Hasan Jafri for a Convenience Credit Account with defendant Carteret in the amount of $1,000.00. The loan application was approved, and

plaintiff and Mr. Jafri signed as co-makers of the loan.

On or about July 26, 1985, Mr. Jafri applied for a Convenience Credit Account in the amount of $10,000. Plaintiff did not sign the application for such account. The application for the $10,000 account by Mr. Jafri was approved in August, 1985 in the amount of $5,000. Jafri used the proceeds from the newly issued $5,000 account to satisfy the 1984 Convenience Credit Agreement and Note in which the plaintiff had joined as a co-maker. Thus, the only extension of credit given by Carteret to the plaintiff was satisfied in full on August 8, 1985.

Although the $5,000 credit account was issued only to Jafri, Carteret mistakenly assigned to such account the same account number originally assigned to the $1,000 Convenience Credit Agreement and Note on which the plaintiff was a co-maker. When Jafri became delinquent on his payments for amounts advanced to him under the $5,000 credit account, Carteret contacted plaintiff on February 8, 1986 to inquire as to the reasons for the delinquencies in payments on the $5,000 credit account. Plaintiff informed Carteret at that time that he had no knowledge of the $5,000 Convenience Credit Account.

Because of Carteret's mistaken belief as to plaintiff's delinquency on Jafri's $5,000 credit account, Carteret apparently notified certain credit reporting bureaus about plaintiff's delinquent status. Carteret claims that on October 27, 1986, by a "bulls eye report", it advised TRW to remove the references to the plaintiff and the $5,000 Convenience Credit Account from TRW's credit bureau report.

Plaintiff brought this action against Carteret and TRW on October 1, 1987. Plaintiff brought the action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"). Count I of plaintiff's complaint is directed against TRW and seeks "actual damages" in the amount of $3,261,000 and

punitive damages in the amount of $1,000,000. Count II of the complaint is directed at Carteret, and also seeks actual damages in the amount of $3,261,000 and $1,000,000 in punitive damages. All of plaintiff's actual damages are alleged to have arisen from lost business and real estate deals which plaintiff could not pursue due to the mistaken credit information Carteret is alleged to have reported to TRW, which in turn is alleged to have released the information to other financial institutions.

After a period of discovery, defendants now bring the current motions. Both defendants argue that plaintiff has not supplied any proof of losses due to Carteret's mistake as to plaintiff's delinquency on the $5,000 account. Carteret contends that it is not amenable to suit under FCRA, and plaintiff now concedes this point and states that its claim against Carteret is now completely grounded in state defamation law. TRW argues that plaintiff has not made out a sufficient case against it under FCRA.

## II. DISCUSSION

### A. FCRA Claim Against TRW

In its supporting papers, TRW puts forward a number of reasons why plaintiff's FCRA claim against it must fail. First, TRW argues that given the fact that plaintiff concedes that TRW was not notified of Carteret's error until October 27, 1986, plaintiff cannot hold TRW responsible for any losses incurred before that date since FCRA does not make a credit reporting bureau strictly liable for mistaken information supplied to it. Second, TRW contends it is entitled to summary judgment since plaintiff's claim is predicated on willful rather than negligent non-compliance with FCRA, and plaintiff has furnished no evidentiary support for its claim of willful non-compliance.[1] Finally, TRW argues that plaintiff seeks compensation only for business damages, which all parties agree are not covered by FCRA.

---

1. In his opposition papers, plaintiff asks the Court to consider plaintiff's FCRA claim as alleging negligent non-compliance even though the complaint mentions only willful non-com-

pliance. The distinction is unimportant, however, because the Court finds an absence of material issue of fact as to the question of either willful or negligent non-compliance by TRW.

■ The Court finds merit in all of the above arguments advanced by TRW in support of its motion for summary judgment. Beginning with the issue of TRW's compliance with FCRA, the Court finds the law well settled that a credit reporting agency does not violate FCRA merely by reporting inaccurate information. *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C.Cir. 1984) ("a plaintiff cannot rest on a showing of mere inaccuracy"); *Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir.1982) ("It is clear ... that liability does not flow automatically from the fact that a credit reporting agency, such as defendant, reports inaccurate information"); *Hauser v. Equifax, Inc.*, 602 F.2d 811 (8th Cir.1979) (consumer reporting agencies not strictly liable for inaccurate reports under FCRA).

■ If a plaintiff can show that a credit agency did report inaccurate information, the plaintiff must next present some evidence from which a trier of fact "can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report." *Stewart*, 734 F.2d at 51. In the instant action, plaintiff has produced no evidence whatsoever which could demonstrate a lack of reasonable procedures on the part of TRW. Plaintiff has tried only to point to differences between TRW and Carteret on the question of whether Carteret notified TRW on October 27, 1986 about the mistaken information on plaintiff. For the period prior to October 27, 1986, plaintiff produces no evidence suggesting TRW had any reason to question the inaccuracy of information it had on the plaintiff.

Thus, viewing the record as a whole and considering all tendered evidence in the light most favorable to plaintiff, the Court finds no jury could decide in plaintiff's favor as to the question of TRW's failure to follow reasonable procedures concerning plaintiff's credit information. See *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987). Therefore, summary judgment in favor of TRW is warranted.

■ Plaintiff has also not adequately responded to TRW's argument that plaintiff has alleged only business damages, which, as plaintiff's counsel admitted at oral argument, are not covered by FCRA. The Court finds that the type of transactions alleged by plaintiff to have been interfered with by the mistaken credit information were straight business real estate deals. Plaintiff's bald allegation that certain of the properties involved were partially for plaintiff's personal use is not supported by any convincing tangible evidence. Thus, for this reason also, summary judgment is required to be entered in defendant's favor.

### B. *Claim Against Carteret*

Because plaintiff has conceded that its action against Carteret is based only on the state law claim of defamation, and given the Court's disposition of plaintiff's FCRA claim against TRW, it is unnecessary and improvident for the Court to exercise jurisdiction over plaintiff's state law claim. See *Schaffer v. Board of School Directors, etc.*, 730 F.2d 910 (3d Cir.1984). Therefore, plaintiff's complaint will be dismissed as against Carteret since there is no diversity between Carteret and plaintiff, and plaintiff has not claimed diversity jurisdiction.

### C. *Defendant's Request for Sanctions*

■ The Third Circuit has stated that because Rule 11 of the Federal Rules of Civil Procedure targets "abuse ... the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir.1987). In the case at bar, while the Court finds that none of plaintiff's claims can withstand defendants' current motions, the Court does not find that plaintiff's conduct, and that of plaintiff's counsel, rose to the level of abuse of the judicial process. Therefore, defendants' requests for sanctions are denied.

### III. CONCLUSION

For the reasons stated above, TRW's motion for summary judgment is granted, and judgment is entered in favor of TRW. Defendant Carteret's motion to dismiss the complaint as against it is also granted.

570

Finally, defendants' request for sanctions are denied.

SO ORDERED.